UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 21-300 17 -MGM |
| v. | Violations: |
| (1) DUNYADAR GASANOV, a/k/a "Damien Gasanov," and | Counts One and Two: Falsification of Records (18 U.S.C. § 1519) |
| (2) DARTANYAN GASANOV, | Count Three: Conspiracy to Falsify Records (18 U.S.C. § 371) |
| Defendants | Count Four: Providing False Statements in a Federal Investigation (18 U.S.C. § 1001) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

The Defendants

1.  Defendant Dunyadar GASANOV, also known as "Damien Gasanov," was a resident of West Springfield, Massachusetts. Dunyadar GASANOV was the Vice President of Westfield Transport, Inc. ("Westfield Transport").

2.  Defendant Dartanyan GASANOV was a resident of West Springfield, Massachusetts. Dartanyan GASANOV was the President of Westfield Transport and East Transport, LLC ("East Transport").

1

## Associated Businesses and Individual

3. Westfield Transport was a for-hire interstate motor carrier that transported automobiles primarily in the northeastern United States and, occasionally, beyond. At a given time, Westfield Transport employed approximately seven drivers and operated approximately seven trucks and eight trailers. Dunyadar GASANOV and Dartanyan GASANOV owned Westfield Transport in equal parts. Westfield Transport ceased operations on or about June 23, 2019. Westfield Transport's business address was listed as 90 Allison Lane, West Springfield, Massachusetts; the company routinely used truck stops located in Chicopee and West Springfield, Massachusetts as bases of operation.

4. East Transport was a for-hire interstate motor carrier that transported automobiles throughout the United States. Dartanyan GASANOV owned and operated East Transport. East Transport employed Dartanyan GASANOV as a driver, as well as at least one other driver, and the company operated at least two trucks. East Transport's business address was listed as 90 Allison Lane, West Springfield, Massachusetts.

5. Driver 1 was an employee of Westfield Transport.

## Federal Motor Carrier Safety Regulations ("FMCSRs")

6. The U.S. Department of Transportation ("USDOT") Federal Motor Carrier Safety Administration (the "FMCSA") was charged with the nationwide regulation of the trucking and motor carrier industry. Its mission was to reduce crashes, injuries, and fatalities involving commercial motor vehicles and buses. The Secretary of the USDOT has promulgated numerous regulations relating to record keeping, safe operation of motor carriers, and qualification of drivers.

These regulations included both mandatory recordkeeping requirements and mandatory operational requirements.

7. Among the regulations promulgated by the Secretary were requirements that motor carriers keep records relating to drivers' hours of service, maintenance and inspections, driver qualifications, commercial driver's license requirements, financial responsibilities, accidents, hazardous materials, and other safety and transportation records. The FMCSA had authority to review the records kept by motor carriers in order to determine whether a motor carrier met the safety fitness standards and whether drivers employed by the motor carrier were qualified to safely operate commercial vehicles. The FMCSA conducted inspections of motor carriers without notice and compliance reviews with prior notice. Compliance reviews were on-site examinations of motor carrier operations.

8. To fulfill its safety mission, the FMCSA restricted the driving time of a driver of a property-carrying commercial motor vehicle as follows:

  a. A driver could not drive without first taking 10 consecutive hours off duty.

  b. A driver could drive only during a period of 14 consecutive hours after coming on duty following 10 consecutive hours off duty. A driver could not drive after the end of the 14-consecutive-hour period without first taking 10 consecutive hours off duty.

  c. A driver could drive a total of 11 hours during the 14-hour period.

  d. A driver could not drive after: a driver has been on duty 60 hours in any period of 7 consecutive days if the employing motor carrier does not operate

commercial motor vehicles every day of the week; or a driver has been on duty 70 hours in any period of eight consecutive days if the employing motor carrier operates commercial motor vehicles every day of the week.

9. The FMCSA mandated that motor carriers require their commercial drivers to record their duty status for each 24-hour period through methods specified in the regulations.

10. The FMCSA required motor carriers to retain records of duty status and supporting documents required under the regulations for each of its drivers for a period of not less than six months from the date of receipt.

Object and Purpose of the Conspiracy

11. The object of the conspiracy was to evade FMCSA regulations governing the maximum allowable number of daily driving hours by fraudulently underreporting the number of hours driven by Westfield Transport employees. The principal purpose of the conspiracy was to increase the profits of Westfield Transport and conceal fraudulent underreporting from USDOT and law enforcement.

Manner and Means of the Conspiracy

12. Among the manner and means by which Dunyadar GASANOV and coconspirators known and unknown to the Grand Jury carried out the conspiracy were the following:

    a. Preparing and aiding and abetting the preparation and maintenance of false and fraudulent drivers' daily hour of service electronic logs ("driving logs"),[1] and

---

[1] All drivers employed by Westfield Transport used electronic logbooks and devices provided by "KeepTruckin'." "KeepTruckin'" is a technology company that produces applications, software and electronic logging devices that track compliance with federal limits on driving time and other data.

4

concealing from the USDOT and FMCSA that Westfield Transport's truck drivers routinely exceeded the maximum number of driving hours and on-duty hours, did not take the required hours off-duty, and otherwise drove in violation of federal law;

b. Routinely disregarding federal highway safety regulations by:

i. Aiding, abetting, encouraging and permitting Westfield Transport drivers to violate federal safety regulations, including by instructing drivers to do so;

ii. Falsely presenting their records of duty status as accurate to an FMCSA Safety Investigator during a compliance review following a fatal crash that occurred on June 21, 2019, when in fact such records were not accurate;

iii. Allowing, encouraging, and causing at least one Westfield Transport driver to operate commercial trucks in violation of federal highway safety regulations, including by exceeding the limitations of allowable driving hours and concealing violations of such federal highway safety regulations;

iv. Allowing, encouraging, and causing at least one Westfield Transport driver to falsify records by deactivating logging devices and making false entries in driving logs to evade federal restrictions on the number of hours a driver may operate a vehicle for commercial purposes; and

c. Knowingly and willfully dispatching Westfield Transport's commercial truck drivers on at least one trip that they knew required excessive driving and on-duty hours, without allowing for the required hours of rest or off-duty time.

Overt Acts in Furtherance of the Conspiracy

13. Between on or about May 3, 2019 and June 23, 2019, Dunyadar GASANOV and coconspirators known and unknown to the Grand Jury committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

a. On or about May 3, 2019, Dunyadar GASANOV instructed Driver 1 to falsify Driver 1's driving logs. On that date, the following occurred:

i. Driver 1 drove a property-carrying commercial motor vehicle on behalf of Westfield Transport.

ii. Driver 1's driving log indicated Driver 1 was off duty for 25 hours in Haverhill, Massachusetts.

iii. At 8:24 a.m., Driver 1 sent an MMS message to Dunyadar GASANOV containing a screenshot of his driving log and asked, "Wait 32. Or turn off?"

iv. Dunyadar GASANOV sent a text message responding, "Keep of [sic] duty...Come here."

v. At 8:25 a.m., Driver 1 sent a message that read "Computer off."

vi. Dunyadar GASANOV responded, "Yes."

vii. At 9:38 a.m., Driver 1 was in the area of Hopkinton, Massachusetts.

  viii. At 10:21 a.m., Driver 1 was in the area of Ludlow, Massachusetts.

  ix. At 10:40 a.m., Driver 1 sent a text message that read "Im here."

b. On May 10, 2019, Dunyadar GASANOV instructed Driver 1 to falsify Driver 1's driving logs. On that date, the following occurred:

  i. Driver 1 drove a property-carrying commercial motor vehicle on behalf of Westfield Transport.

  ii. Driver 1's driving log indicated Driver 1 was off-duty from midnight until 10:27 a.m. at a location 59.7 miles south of Childress, Texas.

  iii. At 12:31 a.m., Driver 1 sent an MMS message to Dunyadar GASANOV containing a picture of a bill of lading showing delivery of a vehicle in Amarillo, Texas.

  iv. At 12:36 a.m., Dunyadar GASANOV sent a picture of vehicle pick-up dispatch in Anthony, Texas and instructed Driver 1 to "Check how far is this pick up from you."

  v. At 12:42 a.m., Driver 1 responded, "6hr 52 minutes. 2hr 20 from last delivery. Go delivery or stop?"

  vi. Dunyadar GASANOV responded, "Delivery bro. But if you Wona sleet [sic] then stop."

  vii. At 12:44 a.m., Driver 1 responded, "Lets go delivery we late hope I dont get stop thats it, Im going now."

  viii. At 1:11 a.m., Driver 1 sent a picture of a trailer carrying a vehicle

and a picture of a fuel receipt dated May 10, 2019 at 12:08 a.m. from a gas station in Amarillo, Texas.

    ix.    At 10:27 a.m., Driver 1 changed Driver 1's status from "off-duty" to "on-duty" in Plainview, Texas.

c.    On May 20, 2019, Dunyadar GASANOV instructed Driver 1 to falsify Driver 1's driving logs. On May 19, 2019 and May 20, 2019, the following occurred:

    i.    Driver 1 drove a property-carrying commercial motor vehicle on behalf of Westfield Transport.

    ii.    At all times, Driver 1's driving log indicated Driver 1 was "off duty" in Danbury, Connecticut.

    iii.    On May 19, 2019, at 8:49 p.m., Driver 1 entered Ludlow, Massachusetts and drove east on the Massachusetts Turnpike.

    iv.    On May 20, 2019, at 9:32 a.m., Driver 1 was in the area of Hopkinton, Massachusetts and drove east on the Massachusetts Turnpike.

    v.    At 11:51 a.m., Driver 1 sent Dunyadar GASANOV a picture of the driving log and wrote, "I turned off in 1 minute. Leave it off?"

    vi.    At 11:52 a.m., Dunyadar GASANOV responded, "Yes."

    vii.    Driver 1 replied, "Ok. Im at Danbury."

    viii.    At 12:11 p.m., Driver 1 was in Danbury, Connecticut.

    ix.    At 1:50 p.m., Driver 1 sent Dunyadar GASANOV a message that

read "2:45 at yard."

x. At 2:42 p.m., Driver 1 sent a text message to Dunyadar GASANOV that read "Im here."

xi. At 8:13 p.m., Driver 1 sent an MMS message to Dunyadar GASANOV containing a picture of a fuel receipt from the Pride Travel Center in Chicopee, Massachusetts.

d. On June 21, 2019, while travelling for commercial purposes, a driver of a Westfield Transport property-carrying commercial motor vehicle struck and killed seven motorcyclists in New Hampshire. As a result, the FMCSA and the National Transportation Safety Board initiated an investigation of Westfield Transport. On or about June 23, 2019, Dunyadar GASANOV and Dartanyan GASANOV provided an FMCSA investigator driving logs documenting the hours of service for Dartanyan GASANOV for June, 2019. Dunyadar GASANOV and Dartanyan GASANOV knew these driving logs were false and concealed the actual hours driven by at least one driver.

e. Between on or about June 25, 2019 and June 28, 2019, Dunyadar GASANOV knowingly made false statements to conceal hours of service violations committed by Dartanyan GASANOV and falsely stated that other Westfield Transport drivers did not falsify their logbooks.

# COUNT ONE

## Falsification of Records
## (18 U.S.C. § 1519)

The Grand Jury charges:

14. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 13 of this Indictment.

15. Between on or about April 8, 2019 and April 19, 2019, in the District of Massachusetts, and elsewhere, the defendant,

(1) Dunyadar GASANOV, a/k/a "Damien Gasanov,"

acting with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the United States Department of Transportation, an agency of the United States, and acting in relation to and in contemplation of such matter, knowingly falsified and made a false entry in a record and document, namely, a driving log. Specifically, Dunyadar GASANOV created a driving log that falsely documented that he was "off duty" on the following dates and times: (1) from approximately 11:28 a.m. on April 8, 2019 until at least approximately 4:22 p.m. on April 8, 2019; (2) from approximately 10:29 p.m. on April 8, 2019 until at least approximately 9:35 a.m. on April 9, 2019; (3) from approximately 1:28 a.m. on April 15, 2019 until at least approximately 7:42 a.m. on April 16, 2019; (4) from approximately 10:24 p.m. on April 15, 2019 until at least approximately 12:53 a.m. on April 18, 2019; (5) from approximately 11:30 p.m. on April 18, 2019 until at least approximately 9:03 p.m. on April 19, 2019. In fact, however, as Dunyadar

GASANOV knew, Dunyadar GASANOV was a driver of a property-carrying commercial motor vehicle and, thus, was required to report being "on duty" because he was in fact on duty and driving during the dates and times listed in records (1) through (5).

All in violation of Title 18, United States Code, Section 1519.

## COUNT TWO
## Falsification of Records
## (18 U.S.C. § 1519)

The Grand Jury further charges:

16. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 13 of this Indictment.

17. Between or about April 8, 2019 and June 19, 2019, in the District of Massachusetts, and elsewhere, the defendant,

(2) Dartanyan GASANOV,

acting with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the United States Department of Transportation, an agency of the United States, and acting in relation to and in contemplation of such matter, knowingly falsified and made a false entry in a record and document, namely, a driving log. Specifically, Dartanyan GASANOV created a driving log that falsely documented that he was "off duty" on the following dates and times: (1) from approximately 12:00 a.m. on April 1, 2019 until at least approximately 6:34 a.m. on April 4, 2019; (2) from approximately 12:00 a.m. on May 24, 2019 until at least approximately 12:00 a.m. on May 25, 2019; and (3) from approximately 12:00 a.m. on June 19, 2019 until at least approximately 12:00 a.m. on June 20, 2019. In fact, however, as Dartanyan GASANOV knew, Dartanyan GASANOV was a driver of a property-carrying commercial motor vehicle and, thus, was required to report being "on duty" because he was in fact on duty and driving during the following dates and times: (1) various times beginning approximately 8:14 a.m. on April 1,

2019 until at least approximately 6:34 a.m. on April 4, 2019; (2) from at least approximately 7:20 a.m. on May 24, 2019 until at least approximately 5:28 p.m. on May 24, 2019; and (3) from approximately 5:23 a.m. on June 19, 2019 until at least approximately 6:03 a.m. on June 19, 2019.

All in violation of Title 18, United States Code, Section 1519.

## COUNT THREE
Conspiracy to Falsify Records
(18 U.S.C. § 371)

The Grand Jury further charges:

18. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 13 of this Indictment.

19. From at least March 2019 through June 2019, in the District of Massachusetts and elsewhere, the defendant,

(1) Dunyadar GASANOV, a/k/a "Damien Gasanov,"

conspired with others known and unknown to the Grand Jury to commit an offense against the United States, to wit, the falsification of records, that is, acting with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the United States Department of Transportation, an agency of the United States, and acting in relation to and in contemplation of such matter, knowingly falsifying and making a false entry in a record and document, namely, a driving log.

All in violation of Title 18, United States Code, Section 371.

## COUNT FOUR
## False Statements
## (18 U.S.C. § 1001(a)(2))

The Grand Jury further charges:

20. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 13 of this Indictment.

21. On or about June 28, 2019, in the District of Massachusetts, the defendant,

(1) Dunyadar GASANOV, a/k/a "Damien Gasanov,"

knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, during an interview with investigators of the National Transportation Safety Board and the Federal Motor Carrier Safety Administration, defendant stated he was not aware that drivers employed by Westfield Transport falsified driving logs. In truth and in fact, as the defendant well knew, his statement was false in that he had knowledge that at least one driver employed by Westfield Transport falsified driving logs.

All in violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL

███████████
FOREPERSON

_____
NEIL J. DESROCHES
ASSISTANT UNITED STATES ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
DISTRICT OF MASSACHUSETTS

District of Massachusetts: FEBRUARY 25, 2021 at 1:46 pm
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK