UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Crim. No. 21-30017-1-MGM |
| | ) | |
| v. | ) | Violations: |
| | ) | |
| DUNYADAR GASANOV, a/k/a "Damien Gasanov," | ) | <u>Counts One through Three</u>: False Statements |
| | ) | (18 U.S.C. § 1001(a)(2)) |
| Defendant | ) | |
| | ) | |

<u>SUPERSEDING INFORMATION</u>

At all times relevant to this Information:

<u>General Allegations</u>

<u>The Defendant</u>

1.      Defendant Dunyadar GASANOV, also known as "Damien Gasanov," was a resident of West Springfield, Massachusetts.  Dunyadar GASANOV was the Vice President of Westfield Transport, Inc. ("Westfield Transport").

<u>Associated Businesses and Individuals</u>

2.      Westfield Transport was a for-hire interstate motor carrier that transported automobiles primarily in the northeastern United States and, occasionally, beyond.  At a given time, Westfield Transport employed approximately seven drivers and operated approximately seven trucks and eight trailers.  Dunyadar GASANOV and Dartanyan GASANOV owned Westfield Transport in equal parts.  Westfield Transport ceased operations on or about June 23, 2019.  Westfield Transport's business address was listed as 90 Allison Lane, West Springfield,

Massachusetts, and routinely used truck stops located in Chicopee and West Springfield, Massachusetts as bases of operation.

3.      Driver 1 was an employee of Westfield Transport.

4.      Driver 2 was an employee of Westfield Transport.

<u>Federal Motor Carrier Safety Regulations ("FMCSRs")</u>

5.      The U.S. Department of Transportation ("USDOT") Federal Motor Carrier Safety Administration (the "FMCSA") was charged with the nationwide regulation of the trucking and motor carrier industry.  Its mission was to reduce crashes, injuries, and fatalities involving commercial motor vehicles and buses.  The Secretary of the USDOT has promulgated numerous regulations relating to record keeping, safe operation of motor carriers, and qualification of drivers. These regulations included both mandatory recordkeeping requirements and mandatory operational requirements.

6.      Among the regulations promulgated by the Secretary were requirements that motor carriers keep records relating to drivers' hours of service, maintenance and inspections, driver qualifications, commercial driver's license requirements, financial responsibilities, accidents, hazardous materials, and other safety and transportation records. The FMCSA had authority to review the records kept by motor carriers in order to determine whether a motor carrier met the safety fitness standards and whether drivers employed by the motor carrier were qualified to safely operate commercial vehicles.  The FMCSA conducted inspections of motor carriers without notice

and compliance reviews with prior notice. Compliance reviews were on-site examinations of motor carrier operations.

7.     To fulfill its safety mission, the FMCSA restricted the driving time of a driver of a property-carrying commercial motor vehicle as follows:

   a.     A driver may not drive without first taking 10 consecutive hours off duty.

   b.     A driver may drive only during a period of 14 consecutive hours after coming on duty following 10 consecutive hours off duty. A driver may not drive after the end of the 14-consecutive-hour period without first taking 10 consecutive hours off duty.

   c.     A driver may drive a total of 11 hours during the 14-hour period.

   d.     A driver may not drive after: a driver has been on duty 60 hours in any period of 7 consecutive days if the employing motor carrier does not operate commercial motor vehicles every day of the week; or a driver has been on duty 70 hours in any period of eight consecutive days if the employing motor carrier operates commercial motor vehicles every day of the week.

8.     The FMCSA mandated that motor carriers require their commercial drivers to record their duty status for each 24-hour period through methods specified in the regulations.

9.     The FMCSA required motor carriers to retain records of duty status and supporting documents required under the regulations for each of its drivers for a period of not less than six months from the date of receipt.

10.     During the period of this Superseding Information, Dunyadar GASANOV evaded FMCSA regulations governing the maximum allowable number of daily driving hours by falsely

underreporting the number of hours driven by Westfield Transport employees. The principal purpose was to increase the profits of Westfield Transport and conceal false underreporting from USDOT and law enforcement.

11.     To accomplish this, the Defendant:

a.     Prepared and aided and abetted the preparation and maintenance of false drivers' daily hour of service electronic logs, and concealed from the USDOT and FMCSA that Westfield Transport's truck drivers routinely exceeded the maximum number of driving hours and "on-duty" hours, did not take the required hours off-duty, and otherwise drove in violation of federal law;

b.     Routinely disregarded federal highway safety regulations by:

i.     Aiding, abetting, encouraging and permitting Westfield Transport drivers to violate federal safety regulations, including by communicating with drivers by text message to do so;

ii.     Falsely presenting their records of duty status as accurate to an FMCSA Safety Investigator during a compliance review following a fatal crash that occurred on June 21, 2019, when in fact such records were not accurate;

iii.     Allowing, encouraging, and causing at least one Westfield Transport driver to operate commercial trucks in violation of federal highway safety regulations, including by exceeding the limitations of allowable driving hours and concealing violations of such federal highway safety regulations;

4

iv.     Allowing, encouraging, and causing at least one Westfield Transport driver to falsify records by deactivating logging devices and making false entries in driving logs to evade federal restrictions on the number of hours a driver may operate a vehicle for commercial purposes; and

c.     Knowingly and willfully dispatched Westfield Transport's commercial truck drivers on at least one trip that they knew required excessive driving and on-duty hours, without allowing for the required hours of rest or off-duty time.

12.     From on or about May 3, 2019 through on or about June 23, 2019, Dunyadar GASANOV committed and caused to be committed the following acts, among others:

a.     On or about May 3, 2019, Dunyadar GASANOV instructed Driver 1 to falsify Driver 1's driving logs. On that date, the following occurred:

i.     Driver 1 drove a property-carrying commercial motor vehicle on behalf of Westfield Transport.

ii.     Driver 1's KeepTruckin' log indicated Driver 1 was off duty for 25 hours in Haverhill, Massachusetts.

iii.     At 8:24 a.m., Driver 1 sent an MMS message to Dunyadar GASANOV containing a screenshot of his KeepTruckin' App and asked, "Wait 32. Or turn off?"

iv.     Dunyadar GASANOV sent a text message responding, "Keep of [sic] duty…Come here."

v.     At 8:25 a.m., Driver 1 sent a message that read, "Computer off."

vi.     Dunyadar GASANOV responded, "Yes."

vii.    At 9:38 a.m., Driver 1 was in the area of Hopkinton, Massachusetts.

viii.    At 10:21 a.m., Driver 1 was in the area of Ludlow, Massachusetts.

ix.    At 10:40 a.m., Driver 1 sent a text message that read, "Im here."

b.    On May 10, 2019, Dunyadar GASANOV instructed Driver 1 to falsify Driver 1's driving logs. On that date, the following occurred:

i.    Driver 1 drove a property-carrying commercial motor vehicle on behalf of Westfield Transport.

ii.    Driver 1's KeepTruckin' log indicated he was off-duty from midnight until 10:27 a.m. at a location 59.7 miles south of Childress, Texas.

iii.    At 12:31 a.m., Driver 1 sent an MMS message to Dunyadar GASANOV containing a picture of a bill of lading showing delivery of a BMW in Amarillo, Texas.

iv.    At 12:36 a.m., Dunyadar GASANOV sent a picture of vehicle pick-up dispatch in Anthony, Texas and instructed Driver 1 to "Check how far is this pick up from you."

v.    At 12:42 a.m., Driver 1 responded: "6hr 52 minutes. 2hr 20 from last delivery. Go delivery or stop?"

vi.    Dunyadar GASANOV responded: "Delivery bro. But if you Wona sleet [sic] then stop."

vii.    At 12:44 a.m., Driver 1 responded, "Lets go delivery we late hope I dont get stop thats it, Im going now."

viii.    At 1:11 a.m., Driver 1 sent a picture of a trailer carrying a vehicle

and a picture of a fuel receipt dated May 10, 2019 at 12:08 a.m. from a gas station in Amarillo, Texas.

ix.     At 10:27 a.m., Driver 1 changed Driver 1's status from "off-duty" to "on-duty" in Plainview, Texas.

c.     On May 20, 2019, Dunyadar GASANOV instructed Driver 1 to falsify Driver 1's driving logs.  On May 19, 2019 and May 20, 2019, the following occurred:

i.     Driver 1 drove a property-carrying commercial motor vehicle on behalf of Westfield Transport.

ii.     At all times, Driver 1's KeepTruckin' log indicated Driver 1 was "off duty" in Danbury, Connecticut.

iii.     On May 19, 2019, at 8:49 p.m., Driver 1 entered Ludlow, Massachusetts and drove east on the Massachusetts Turnpike.

iv.     On May 20, 2019, at 9:32 a.m., Driver 1 was in the area of Hopkinton, Massachusetts and drove east on the Massachusetts Turnpike.

v.     At 11:51 a.m., Driver 1 sent Dunyadar GASANOV a picture of the KeepTruckin' log and wrote: "I turned off in 1 minute. Leave it off?"

vi.     At 11:52 a.m., Dunyadar GASANOV responded, "Yes."

vii.     Driver 1 replied, "Ok. Im at Danbury."

viii.     At 12:11 p.m., Driver 1 was in Danbury, Connecticut.

ix.     At 1:50 p.m., Driver 1 sent Dunyadar GASANOV a message that read: "2:45 at yard."

x.      At 2:42 p.m., Driver 1 sent a text message to Dunyadar GASANOV that read, "Im here."

xi.     At 8:13 p.m., Driver 1 sent an MMS message to Dunyadar GASANOV containing a picture of a fuel receipt from the Pride Travel Center in Chicopee, Massachusetts.

d.      On June 21, 2019, while travelling for commercial purposes, DRIVER 2, while driving a Westfield Transport property-carrying commercial motor vehicle, struck and killed seven motorcyclists in New Hampshire.  As a result, the FMCSA and the National Transportation Safety Board ("NTSB") initiated an investigation of Westfield Transport.   On or about June 23, 2019, Dunyadar GASANOV provided an FMCSA investigator logs documenting the hours of service for Dunyadar GASANOV, Dartanyan GASANOV, and other drivers employed by Westfield Transport for 2019.  Dunyadar GASANOV knew these logs were false and concealed the actual hours driven by Westfield Transport drivers.   Upon providing these documents, Dunyadar GASANOV knowingly made false statements to investigators that the driving logs were accurate.

e.      On June 25, 2019, during an interview with investigators from the FMCSA and NTSB, Dunyadar GASANOV knowingly made false statements to conceal hours of service violations committed by Dartanyan GASANOV.

f.      On June 28, 2019, during an interview with investigators from the FMCSA and the NTSB, Dunyadar GASANOV falsely stated that other Westfield Transport drivers did not falsify their logbooks.

g.      During this interview, Dunyadar GASANOV also falsely claimed that he first met DRIVER 2 on June 16, 2019.  Dunyadar GASANOV knew, in fact, that he had known DRIVER 2 for years before that date and was aware that DRIVER 2 had been charged with operating a vehicle while under the influence of alcohol in approximately 2013.

## COUNT ONE
False Statements
(18 U.S.C. § 1001(a)(2))

The United States Attorney alleges:

13.　　The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 12 of this Superseding Information.

14.　　On or about June 23, 2019, in the District of Massachusetts, the defendant,

Dunyadar GASANOV, a/k/a "Damien Gasanov,"

knowingly and willfully made a materially false and fictitious statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, during an interview with investigators of the NTSB and the FMCSA, the defendant provided an FMCSA investigator driving logs that falsely documented that he was "off duty" on the following dates and times: (1) from approximately 11:28 a.m. on April 8, 2019 until at least approximately 4:22 p.m. on April 8, 2019; (2) from approximately 10:29 p.m. on April 8, 2019 until at least approximately 9:35 a.m. on April 9, 2019; (3) from approximately 1:28 a.m. on April 15, 2019 until at least approximately 7:42 a.m. on April 16, 2019; (4) from approximately 10:24 p.m. on April 15, 2019 until at least approximately 12:53 a.m. on April 18, 2019; and (5) from approximately 11:30 p.m. on April 18, 2019 until at least approximately 9:03 p.m. on April 19, 2019.  In truth and in fact, as the defendant well knew, his statements in the driving logs were false in that he was in fact on duty and driving during the dates and times listed in records (1) through (5).

All in violation of Title 18, United States Code, Section 1001(a)(2).

COUNT TWO
False Statements
(18 U.S.C. § 1001(a)(2))

The United States Attorney further alleges:

15.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 12 of this Superseding Information.

16.     On or about June 25, 2019, in the District of Massachusetts, the defendant,

Dunyadar GASANOV, a/k/a "Damien Gasanov,"

knowingly and willfully made a materially false and fictitious statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, during an interview with investigators of the NTSB and the FMCSA, the defendant stated he first met DRIVER 2 on June 16, 2019.  In truth and in fact, as the defendant well knew, his statement was false in that he first met the defendant years before that date and was aware that DRIVER 2 was charged with operating a vehicle while under the influence of alcohol in 2013.

All in violation of Title 18, United States Code, Section 1001(a)(2).

<u>COUNT THREE</u>
False Statements
(18 U.S.C. § 1001(a)(2))

The United States Attorney further alleges:

17.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 12 of this Superseding Information.

18.     On or about June 28, 2019, in the District of Massachusetts, the defendant,

Dunyadar GASANOV, a/k/a "Damien Gasanov,"

knowingly and willfully made a materially false and fictitious statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, during an interview with investigators of the NTSB and the FMCSA, the defendant stated he was not aware that drivers employed by Westfield Transport falsified driving logs.  In truth and in fact, as the defendant well knew, his statement was false in that he knew that at least one other driver employed by Westfield Transport falsified driving logs.

All in violation of Title 18, United States Code, Section 1001(a)(2).

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:     /s/ Neil L. Desroches
        NEIL L. DESROCHES
        Assistant U.S. Attorney

Date:  August 13, 2024